Case number 22-1197, Southern Iowa, United States v. Manuel Flores. Ms. Messmer. Thank you, Your Honors. May it please the Court and Counsel. I'm Gina Messmer on behalf of the dependent. And in this case, obviously reasonable suspicion is a very fact-based inquiry when seizing a package. There are Eighth Circuit cases on either side of the line. The facts in this case fall on the unconstitutional side of the line. There was testimony by an inspector about the factors he considered, but that testimony... What issue are we talking? Seizure now? Yes, the seizure of the package. Correct. Let me give you my take on that. Please do. And you tell me where I'm wrong. Our law is established by an in-bank case at Laverie, as I recall, is there has to be a meaningful interference with the postal delivery. And here we're talking about as of July 20. Well, the defendant had already interrupted the usual method of delivery. And it was back to the Postal Service with them to know what to do with it. And the unusual thing about this, I think it's unusual, this package had a phone number as well as a return address. And you're arguing simply that, well, a policy is to send it back. But I would say a reasonable Postal Service person, having been there in my youth, would say, well, I should call that number and ask if I get the sender, does he or she want it sent back or an attempted new delivery? Might say, well, I'll have somebody come pick it up or we'll be there today. So at that point, we'd have no interference even conceivable with the delivery. And what does the Postal Service do? It calls a law enforcement officer. And it seems to me that what the postal person knew about the reason for the non-delivery made that not unreasonable for a postman. And then we proceed from there, which tells me there was no seizure until the package was opened with the apparent consent. And we get to the consent question. What's wrong with that analysis? The first thing I would say is this was not an issue that was flushed out before the district court. The testimony was that it was. That doesn't matter. It's an issue of law. Is the label in the record? Pardon my ignorance. I do not recall seeing that as an exhibit. Because this was express mail, right? It was express mail for two days. Does express mail have a line for the telephone number? Yes, I believe so. And that was where it was filled out. I think so, too. Yes, that's how everyone knew it. But you and me speculating, is it in the record, the label? I do not believe it is in the record. I know the government submitted several exhibits. Proceed with your argument. I don't believe it was one. In any event, the testimony regarding whether it was taken out of the stream of commerce was that it was that the standard procedure would be to return this package to the person after. Whose testimony? This was based on Inspector Brandt, the postal inspector. He was the only witness. But he testified the standard practice would be they would hold it for a couple of days to see if somebody picked it up and then send it back. So that's the testimony on that issue. In terms of whether and when it was... So he isn't law enforcement. He's a USPS person? He's a postal inspector. He is law enforcement. But within the postal service. Who employs him? I believe the United States government. He said United States Postal Service. Are you employed with the United States Postal Service? He says, I am. I work for Postal Inspection Service, a branch of the Postal Service. That makes it even more reasonable, my scenario. But his role within the Postal Service is law enforcement. The next question, are you a law enforcement officer? I am. Yes, exactly. Alright, I'm trying to get back to what your question was. You've got a good witness here, though. Go ahead. So in terms of whether there was the seizure. It is tied together with whether the consent was valid. Because then, I'll move on to the consent issue. This is a situation where the officer had actual information that would undercut and make it not reasonable that he thought that person had authority. The officer testified that he specifically asked the person he was speaking with on a line, if you were the sender, why didn't you know the contents of the package? That right there is reason to doubt the truth that this person had authority to allow him to open that package. That triggered the officer to have an additional duty to do some further inquiry to determine if this person was legitimately the person who sent the package. Well, but the person on the other end of the phone had said they sent a package express mail to Des Moines, right? That's correct. I mean, why doesn't it just increase his reasonable suspicion that there's some shenanigans going on here because the person won't admit what's in it? I would concede that would be an additional factor to consider for reasonable suspicion, but I don't concede that it would actually then give him consent. It's a hinky factor, but it's a factor that undercuts. But it suggests that the person was in fact the sender and was up to no good, arguably, if you take it one half a step further, which would suggest that the consent was valid or at least apparently valid. I think that that would be speculation. You think I've gone half a step too far? I think you've gone half a step too far. And here, what he should have done is take half a step back and done the further inquiry that he actually did later after opening the package, where he looked up to see who that sender was associated with, the address and the phone number, and he determined it was another person entirely and not Manuel Flores. Had he taken that step, then he would have been able to follow up, perhaps call the person, ask their actual identity, do some further investigation to see, is this a person who sent the package? Or is this, I don't know, some kind of fraudulent number and there is something hinky going on where this person just simply doesn't have the consent? So at that point, that's where there is the seizure. It's definitely out of the stream of commerce at that point. And that's the point from which everything should be suppressed. What's your argument against the consent? Because the officer testifies he gave consent. So what's your argument against the consent? My argument is the officer needs to have a reasonable belief that the person does have consent. And my argument is that when the person said, I don't know what's in that package and hung up, that that created a... That's the end, but before that, the officer testifies he gave me consent. Period. I asked for consent, he gave me consent. But also said he didn't know what was in the package. I agree. But the issue is then, did that person have authority? And was that consent valid? But it's the authority question. If there's enough for apparent authority, it seems to me the officer is allowed to rely on the local consent. I agree, but that's where I disagree that there was the apparent authority. We're talking about apparent authority. We're not talking about whether it should have been the fact when he said, yes, go ahead and open it, that somehow triggered a duty to inquire further. I agree. It's about the apparent authority. The question was when he calls the number on the phone and the person who answers says, yes, I'm the sender, yes, I sent the package. Is that enough for apparent authority? No, because then the subsequent conversation completely undercut that when he said he didn't know what was in the package. And if you were the sender, you would know what was in the package. And the court has held that... Oh, come on. People send things, they don't know what... Do they? I've never sent a package where I didn't know what it was. Anonymous, a gift, you know. If I were sent something... Well... In any event, the court has held that when there are facts that put an officer on notice that a person has limited authority or does not have actual authority, they can't ignore those signals. And that's what happened here. The officer ignored that signal. He went forward instead of taking the step back and doing an extra investigation. And so it's based on those facts, the original illegal seizure in the opening of the package, which was undercut by there not being consent, that then undercuts the statements made by the defendant and the warrant that was obtained later for the search warrant. And that's my argument on those, that without that opening of the package, everything else crumbles past that. Transitioning then to the sentencing issue, the defendant here, after losing the suppression motion, entered a plea and then was sentenced. And his sentencing guideline was well under the mandatory minimum, a full year under the mandatory minimum. Both parties argued to the court that he should just receive the mandatory minimum, and that was sufficient but not greater than necessary. But the court was frustrated by the defendant's behavior while awaiting his sentencing in custody at the local jail. And so the court recognized explicitly, even though she generally gives variances and thinks the guidelines themselves are too high, that because of his behavior, she didn't think it was fair to sentence him to the same sentence another person would get with that same mandatory. And in essence, what the court did then was disregard that mandatory minimum and skip ahead, or disregard the guidelines and skip ahead to the mandatory minimum and impose a variance from there. Now you're experienced. If there's a statutory mandatory minimum, it becomes the guideline, right? That's right in the guidelines. I think that's, yes, that's stated. That's the black letter law of the sentencing commission that has all kinds of power. That's true. But that's simply because you can't go any lower, and so the guidelines have to come up that high. But I don't think it changes the fact that the underlying substantive guidelines that are supposed to reflect the seriousness of the crime and the quantity and all these other factors, those don't change. They don't automatically become higher. But she wanted to give this defendant a little more than everyone else. Everyone else would have had 120, right? So she gave 126. That seems entirely reasonable and well-explained in the record. I don't understand how that's substantively unreasonable. I would say because I think that doing so lost sight of what sentence is sufficient but not greater than necessary. Here, if this defendant wouldn't have had a mandatory minimum sentence, based on the judge's comments. I mean, it does, right? So everyone who's up on this charge who's convicted of this has a mandatory minimum, sits at 120 minimum. And the only way to give a higher sentence is to go above 120. I mean, would 122 have been fine, or is it the fact that it's six months? I guess I just don't find the teeth in that argument. I think it comes down to the judge's statements that she ordinarily would give a downward variance. So already we're looking at maybe someone who's going to be below the 87 months had they not had a mandatory minimum. And then instead of varying from that point of where she maybe normally would have been, she hops up above the guidelines to the 120. And that's what makes it substantively unreasonable. And I think just conceptually it's difficult because in a sense, perhaps every mandatory minimum that has guidelines underneath is greater than what's necessary to serve the purposes of sentencing. But due to Congress, that's what we have to do. But here where the judge does have some discretion, she went above what was necessary to serve the purposes of sentencing. And so just losing sight of the guidelines and not connecting her sentence to what the guideline range actually was is where the error happened. And I will reserve the rest of my time for rebuttal. Thank you. Thank you. Ms. Weiser? May it please the Court, Mallory Weiser, on behalf of the United States. I would like to start off, Your Honors, by noting that defense counsel at the suppression hearing did enter a few exhibits, I believe maybe A through D. And those were photos of the packaging label. So those were entered by defense at the suppression hearing. And Inspector Brant... So some defense counsel has those exhibits, right? Yes, Your Honor. Thank you. Proceed. So the inspector did testify about those exhibits as they were entered without objection from the government and were discussed, like Your Honors, the question about where a phone number was for the sender. I wanted to start also by addressing opposing counsel's last argument about the sentencing. I'm going to hop ahead chronologically and note that opposing counsel is ignoring the guidelines in that they're talking about this sentence below the mandatory minimum, which is set out by Congress. 120 months was the new guideline. This is only a six-month variance. And when you look at how the district court explained why... It's a six-month issue. It's a six-month issue. Yes, Your Honor, it's a six-month issue. And the district court, even though it was, you know, you could say only six months, it is above the mandatory minimum. It is a variance above what the guidelines were at that point. But the district court went through all of the reasons that... I think your time would be better spent, Your Honor, on the unusual seizure and consent questions. I don't know why you start there, frankly. Yes, Your Honor. I just wanted to address kind of what you were left off with and note that this is only a six-month variance and the district court did go through those reasons for giving that six-month variance. But to talk about the more unusual part of the case, or the more part that starts off the whole case, I would say, is the seizure and then consent. There are various characteristics that raise a reasonable suspicion about this package. It's not in a vacuum and it's not piecemeal, kind of like defense was going through. You know, it seems pretty thin. If the initial seizure of the package was a legal seizure, I mean, this is the sort of thing... I don't live in California, but I have relatives who do. When I send overnight mail, which I do on occasion, I handwrite the label. The fact that someone's living in a hotel, if I'm sending it to a relative, you know, the name is going to be similar. It just seems... Other ones you've got strangely packed with tape, with twine. It looks like, you know, it was done in haste or something along those lines. This, other than California, strikes me as something I might send. Frankly, Your Honor, I think that there's a little bit of a difference there in that you might not send something to a hotel, and if you do, you're going to expect the person to be there and not have been removed a few days prior. Counsel, all kinds of people, including the three of us up here, get things at hotels all the time. Yes, Your Honor. So tell me what the strongest point of this is from the four or five things. Express mail, handwritten, source state, hotel, and individuals with similar names. That's what it came down with, right? Yes, Your Honor. Those five factors. The source state, express mail, also individual to individual, also a handwritten. Those are three separate things. Then it was sent to a hotel, and the person was actually removed from the hotel. So it's not a piecemeal thing. One of these things is not suspicious, Your Honor. The fact that it was sent to a hotel is not suspicious. The fact that it had handwritten labels, not inherently suspicious, though there is testimony from Inspector Brandt about handwritten labels, are quite rare on express package. I guess you're conceding. You're running away from the analysis that I started with. No, Your Honor. I actually think that's a great analysis. Well, then why are you sticking with a much tougher analysis? I'm just trying to answer the question, Your Honor, what was posed. No, you started there. Let's start with the factors, the package factors. And that, frankly, if we go to the package factors, I suspect you may lose. I disagree with that analysis, Your Honor. But it's reality. It doesn't matter whether you agree with it or not. The government's argument is that the package is not looked at in a vacuum. It's looked at with a training experience, which is explained at the district court. No other argument is made by the government, and we shouldn't consider it. No, Your Honor, that's not what the government is stating. The government is stating there was reasonable suspicion to seize the package. But from your point of view earlier, Your Honor, is that it probably wasn't even seized at that point. When was it seized? It wasn't seized until after it was opened and there was methamphetamine found because of the consent to open the package. No, no, no. Why wasn't it seized when they didn't immediately put it in the mail back to the original address? Your Honor, Inspector Brandt testified during the suppression hearing. Give me as a matter of seizure law. It was not. Our in-bank seizure law. When was the seizure and why? There was no meaningful interference. Pardon? There was no meaningful interference with the possessory interest of this package when it was taken back to the sorting center because it could not be delivered. Of course, okay. But then, no, the question starts with what the postal person did. So he looked at the package and then called the sender. After deciding it was suspicious based on the factors, he called the sender, got consent to open it. There's methamphetamine inside. He didn't call the sender. The inspector did. He called the postal inspector. Yes, the inspector called. Why wasn't that meaningful interference? When the mail carrier? No, it was a postal clerk. Believe me, it was not the carrier. When they put it in, I'm sorry, Your Honor, I'm trying to understand. When it came back from the hotel. Because that's not the policy. A carrier would have taken it back, but a clerk would have taken it from there unless USPS has changed since I worked there. No, Your Honor, the carrier would have taken it back. You're correct. A clerk or the carrier would have put it in the room. The clerk looks at the situation. I don't know if the clerk, I don't know if it's in the record whether the clerk learned the reason for the non-delivery, but it's in the record. The clerk did learn. Yeah, so the clerk, what does the clerk do? Could have put it in the mail, could have called the sender, decided to call. Now, when you say it called the center, was that for guidance or was that a call to postal law enforcement? Sorry, Your Honor, I meant that the inspector, Inspector Branton testified he was the one who called the sender. I know, but I'm talking about the postal clerk. The postal clerk? What's the postal clerk supposed to, what, when, why did the postal clerk accomplish a seizure? Your Honor, the postal clerk did not accomplish a seizure. The package was put in a room where they. That's the argument. Why is that argument wrong? Because there was no meaningful seizure. There was no one to deliver it to. It was put in a room where you can wait for the person to come pick up the package, which Manuel Flores did do. Your own witness was testified, probably without full knowledge of clerk guidance. No, the policy is to send it back. After waiting five to seven days, if not more, to see if someone comes to retrieve the package. Is that in the record? Yes, Your Honor. That was testified to at the suppression hearing. Okay, well, they didn't follow that policy. The clerk. The clerk did not do that. The clerk did do that, did put that in the room where all the packages are that cannot be sent. That was testified to. The clerk did not let it sit there for five to seven days. No. To see what happens. Yes, Your Honor. They put it in the room. So, Your Honor, did the clerk meaningfully interfere under our lovery principles with the customary delivery? No, Your Honor, because they would have waited five to seven days, if not more, to see if someone came to pick up the parcel. But the clerk said in process a procedure that varied from the normal. In that they called the inspector? Yes. Okay, yes. And then the inspector came and did his thing. The inspector came, looked at the parcel, decided that it was suspicious based on his training experience, and then called the sender. So you have to win the five factors analysis at that point? When, yes, Your Honor, when he. No. Well, the postal inspector did not seize it until after it was found to have methamphetamine inside. If the clerk had just picked up the phone and called the sender instead of calling the sender or putting it in the room for seven days, would that have been a meaningful interference with USPS delivery system? No, Your Honor, I don't believe so. So instead it was a different USPS employee who made a call that was not unreasonable? Yes, Your Honor. Why is the argument that that was a seizure wrong? At the point when the clerk called the inspector, Your Honor? Well, yes, the fact that the inspector came in the middle of the process. If the clerk calling was reasonable, why does it become a seizure because Brant was called? Because Brant has the training and experience to determine that that package was suspicious and he reasonably believed there was narcotics inside. You don't get it. It doesn't matter under this analysis. If the question is meaningful interference, it doesn't matter whether the package was suspicious. There was no meaningful interference by calling the postal inspector to come into a room to look at all the packages and look at this one. Yeah, right. So there's no meaningful seizure at that point, Your Honor. Right. Right. But he doesn't say send it back and he doesn't say let it sit there for seven days. No, he decided to call. He makes the decision to call the sender. And still at that point there would not be a meaningful interference with the possessor interest or seizure. I don't understand why that isn't your main argument. In fact, you run away from it. That's not the government's, not my meaning to run away from that, Your Honor. I agree with the position. Is it in your brief? No, Your Honor, it's not. Thank you. Proceed. Thank you. So to talk more about the consent issue, because I know that was discussed at length during opposing counsel's argument, I want to address that as well in that the mail, a mail answered, Manuel Flores, a mail answered after the number set out by the sender was called. Inspector Brandt testified that it only took a few rings or maybe just on the second call the purported sender answered and gave consent. He said, yes, I am Manuel Flores. Yes, I sent the express package to Des Moines. Yes, you can look inside of it. It is more of almost a rhetorical question that shouldn't be lost on the record when he says, well, if you sent this package, why don't you know what's in it? That's much more of a rhetorical question when you look at what Inspector Brandt testified to prior in the sentence suppression hearing, which was he calls senders or recipients all the time. They want their package back. They might not realize, even if he does introduce himself, that he's law enforcement, and they're not going to get their package back because there's drugs inside. So that's naturally when people start to distance themselves a little bit. So that makes sense in the totality of circumstances why the consent was valid and why this person didn't say that they really didn't know what was in it. They were distancing themselves from 85 grams of methamphetamine that was in the package once they realized they were not going to be getting it back. Because the inspector did not have a deficiency in the consent, he was allowed to open it. He found the methamphetamine inside, which led to the further things that defense raises in their brief and was raised at the suppression hearing, which was that the law enforcement then seized the cell phone to protect the status quo and protect any evidence that may have been in it, and that the defendant's arrest was pursuant to him accepting a package of methamphetamine the following day. If there are no further questions, the government would rest on its brief and yield the rest of its time. Thank you, Your Honors. In my argument, I suppose we didn't get around to talking much about reasonable suspicion, but I don't at all mean to concede that issue. I think the most significant thing here that distinguishes this case from other cases that the court has found a seizure was constitutional because there was reasonable suspicion is the fact that there was not law enforcement testimony explaining why these factors somehow individually became more than the sum of their parts. What does the record show about why the defendant had left the hotel where this was addressed to? I don't recall that. In terms of how it played out with the reasonable suspicion analysis, the postal inspector was called and said this package was supposed to be delivered, but the person wasn't there. He'd been removed from the hotel. That's all the inspector knew at the point when he went and seized the package and at the point he was making the call to the sender. After he made that call and opened the package, he did further investigation, spoke to the police, and determined why the defendant had been removed from the hotel, which he was being disruptive. But the postal inspector didn't know that at the time of the seizure or non-seizure? Correct. So that did not factor into the reasonable suspicion analysis. He knew he was removed from the hotel days earlier, right? Correct. That's all. But in terms of the investigator testimony here, he did testify these are factors we look for, but he didn't explain why it makes the package more suspicious than not. It was very conclusory. There was no analysis of why being handwritten makes it a drug package beyond just that it's an individual sending it, which, again, is something that can be completely innocuous. And a lot of the suspicious factors that put cases over the edge in other cases were not present here. There was no taping of the package, no perfuming, things that would be done, as explained in other cases, to try to cover up the smell of drugs or deter drug dogs from finding anything. There was nothing hinky the officer noticed in regards to the address not being either like it was sent from a different postal code than the sender's zip code or that the addresses were invalid. There's nothing like that that undercut the validity of this package when he had it. So all we were left with were innocuous factors that weren't enough for reasonable suspicion. And in terms of when the seizure happened, it's the government's burden to prove that this was not taken out of the stream of commerce, it didn't delay delivery, and it didn't deprive the carrier of custody. The government did not carry that burden in this case. Now, wait, wait, wait, wait. The burden's on the defendant to prove the seizure. That's correct. So at the time, this is a question of when the seizure occurred. I would think that's the defendant's burden. I think that this would still fall on the government to prove. You got a case for that? I don't, Your Honor. Because we've, in my many years, it took the court in bank to decide that seizure was a question of law. I think the Supreme Court makes it clear it's the defendant's burden to prove suppression. I would think timing's the defendant's burden. Assuming for the sake of argument that it is the defendant's burden, then, yes, there was enough for the court to conclude here, as a matter of law, that the inspector's actions did delay the processing. He got a call, and it wasn't until the next day that he went in to take this package, and he did actually take it back to his office in order to open it. So that would be a Would it have been sitting in this other room with these other non-delivered or undeliverable packages during that time period? One of the factors that will establish a seizure is if it deprived the carrier of custody, and certainly by taking it from the postal office, that would deprive the carrier of custody. Well, it was in the custody of a U.S. postal employee. That's distinct from being in the stream of where it's supposed to be going. I take your point. Okay. Well, you can't go there. I mean, you're resting. You've only got postal policy as described by an employee who probably doesn't have full knowledge of the policy, to just assert, well, if they let it sit there for five to seven days, that's a meaningful interference with the delivery of an undeliverable package. You just can't go there. Another fact I would point out is that the postal inspector did testify that the label had the box checked for return to sender if undeliverable. But with a phone number? Correct. Okay. With a first-class mail, that wouldn't be true. With express, with certified, you have a whole additional level of information. With express mail, okay. But if the phone number is there, if it's on a first-class letter and in addition to the address is a phone number, that's an invitation to the postal service to call if it's undeliverable, isn't it? And there's no evidence in the record that the postal service followed that policy. No, they did call. They called the postal inspector. No, he is the postal service. I think at this point we're getting beyond what the record facts are in terms of what policy would be for the post office. Based on the record. That's what I say, I think it's your burden. If you find a case to the contrary, I'll invite a 20-J letter. I think that the defense carried the burden by establishing that the box was checked to return to sender and that did not happen. I understand. Thank you. That's clearly briefed and argued. The best we can do with this record. Thank you. Next time I think we'll have you consult before we question an officer in one of these cases. Thank you. Ms. Mesimer, I note you were appointed under the Criminal Justice Act and the court appreciates your assistance. And the case is fully briefed and argued and we'll take it under advisement.